# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action Number |
| | | **2:09-cv-01950-AKK** |
| **v.** | ) ) | |
| **RIVERVIEW ANIMAL CLINIC, P.C.,** | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

The facts of this case are well-known to the parties and this court.  The court conducted a three-day jury trial in which the jury, after deliberation carried the trial into its fourth day, ultimately found for Defendant.  The case is now before the court on the parties' several post-trial motions.  Defendant moves for attorney's fees and costs, (doc. 118), and for oral argument on those fees and costs, (doc. 133).  The EEOC moves for judgment as a matter of law and for a new trial, (doc. 121), and to strike several portions of Defendant's submissions, (docs. 123, 134).  As discussed below, the court **GRANTS** only Defendant's motion for costs and **DENIES** the other pending motions.

1

A. **Motion for Attorney's Fees and Costs**

In an action like this one, "the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee . . . as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."  42 U.S.C. § 2000e-5(k). The court will first consider the motion for attorney's fees, then consider the motion for costs.

(i) Attorney's Fees

"A defendant may recover attorneys' fees under Section 2000e-5(k) if the court finds that the claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so."  *U.S. v. Crosby*, 59 F.3d 1133, 1137 (11th Cir. 1995) (internal quotation marks and citation omitted).  A district court's decision to deny attorney's fees is subject to an abuse of discretion standard.  *Id.*

Though the statute allows an award to prevailing parties, "[t]o take the further step of assessing attorneys' fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII."  *See Christiansburg Garment Co. v. E.E.O.C.*, 434

2

U.S. 412, 422 (1978).  Moreover, the language of § 2000e-5(k) treats the EEOC the same as a private party, and, thus, "does not support a difference in treatment among private and Government plaintiffs when a prevailing defendant seeks to recover his attorney's fees." *Id.* at 422 n.20.  For these reasons, courts in this Circuit only assess attorney's fees against a prevailing plaintiff where the claim is frivolous and without justification. *See, e.g.*, *Sayers v. Stewart Sleep Ctr., Inc.*, 140 F.3d 1351,1354 (11th Cir. 1998) (holding that the district court abused its discretion in awarding attorney's fees to the defendant where the court failed to find the plaintiff's claim "frivolous, unreasonable, unfounded, or brought in bad faith"); *Torres v. City of Orlando*, 264 F. Supp. 2d 1046, 1053-54 (M.D. Fla. 2003) (finding the claims frivolous and in bad faith, justifying attorneys' fees award for the defendant).  Significantly, that a claim is unsuccessful does not transform it into a frivolous, unreasonable, or unfounded claim or one brought in bad faith. *See O'Neal v. DeKalb*, 850 F.2d 653, 658 (11th Cir. 1988) ("Simply because the district court granted defendants' motion for summary judgment does not mean that plaintiffs' action was frivolous.").

To support its contention that the EEOC pursued a frivolous case, Defendant relies on a facsimile it claimed it received from an EEOC employee and asserts also that "Jones cried discrimination, and the EEOC, without any evidence,

sympathetically filed suit on her behalf." Doc. 119 at 11. Whatever Defendant's belief regarding the purported facsimile, (doc. 119 at 31), the court disagrees that the facts of this case support the contention that the EEOC behaved improperly by pursuing its case to trial. That an employee at the EEOC allegedly disagrees with the decision to litigate is irrelevant. Moreover, to the extent the EEOC chose to pursue a claim Defendant believed had no merit, the jury vindicated Defendant's assertion. Success on the merits, however, does not somehow validate the facsimile author's claims. The court sees no reason to hold a hearing on the facsimile as Defendant requests because the only thing relevant to this court's assessment of whether the EEOC pursued a frivolous case is the evidence the parties presented to the court at trial. Therefore, the motion for a hearing is **DENIED**.

As to the contention that the EEOC pursued a claim based solely on Jones' unsubstantiated cries of discrimination, the court apparently sat through a different trial than Defendant. The court notes that at the trial it presided over, the EEOC presented evidence that Kathie Bothma confronted Jones on her first day about her pregnancy and told her three days later at her termination that "it was a fast paced job and she thought it would be too stressful of an environment with everything going on in my life and my pregnancy," which Jones' supervisor Meghan Wayman

4

confirmed.  Doc. 139 at 67, 27; doc. 138 at 97, 102.  Moreover, the EEOC

presented evidence about comparators who had performance issues during their

probation and yet, unlike Jones, were not terminated.  Doc. 138 at 104-105; doc.

48-2 at 40-46.[1]  In fact, Defendant extended the probation of one.  Doc. 48-2 at 44

(noting the extension of probationary period by 30 days for comparator).

Furthermore, the EEOC presented evidence that Defendant initially placed Jones

on a two week training schedule, with computers the first 4 days and phones the

next week.  Doc. 138 at 92-93.  The testimony also showed that Defendant

acknowledged that Jones performed well on mastering the computer training and

yet discharged her that first week for not mastering the phones, (doc. 138 at 120-

121), even though one of her trainers, Melody Nicol, testified that "[w]ithin a

week, you can start picking up a lot of the information . . . [b]ut it takes a long

time after" to fully learn the receptionist position.  Doc. 140 at 49.

   These facts not only belie Defendant's contention that the EEOC acted

"without any evidence" and pursued this matter based on sympathy, but also, in

this court's opinion, a failure to act on these facts would have undermined the

---

[1]At trial, the EEOC's counsel read into the record much of Defendant's 30(b)(6 )
deposition.  The parties agreed not to have the court reporter transcribe the entirety of that
deposition, instead opting to stipulate to the addition of the 30(b)(6) deposition as a part of the
trial record.  *See* doc. 126 at 171-172.

EEOC's credibility as one of the enforcers of the nation's anti-discrimination laws. That the jury disagreed with the EEOC and found that Defendant did not discharge Jones because of her pregnancy in no way suggests that the EEOC's evaluation of this matter was flawed.  To the contrary, the facts the EEOC uncovered during its investigation and that it presented at trial belie Defendant's contention that "Jones cried discrimination, and the EEOC, without any evidence, sympathetically filed suit on her behalf."  Doc. 119 at 11.  Although Defendant will disagree, the court believes that the jury could have easily returned a verdict for the EEOC in light of the evidence it presented.  Because the EEOC pursued the case based on plausible facts, there is simply no basis for this court to find that this litigation was frivolous, unreasonable or without foundation.

As to Defendant's contention that the EEOC's conciliation efforts and pre-trial strategy constituted bad faith, (*see* doc. 119 at 4-6), the court disagrees.  The EEOC's pretrial conciliation strategy may have been rigid, but, as the court explained in depth previously, the EEOC conducted conciliation well within the requirements of the law.  *See* doc. 62 at 5-11.  Moreover, the court denied summary judgment for Defendant because there were material issues of fact with respect to several aspects of this case.  The counsel for the parties tried the matter ably and, ultimately, the jury sided with Defendant.

6

That Defendant prevailed, however, does not alone support the award of attorney's fees.  Indeed, "it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."  *See Christiansburg Garment*, 434 U.S. at 421-22.  In spite of Defendant's clear belief otherwise, the EEOC's pursuit of this case to trial appeared rationale and well-supported.  Defendant's characterization of this case as frivolous or unfounded belies the trial that the undersigned witnessed.  In short, the record here does not support an award of attorney's fees and, accordingly, the motion is **DENIED**.[2]

(ii) Motion for Costs

"Prevailing parties are entitled to receive costs under Fed. R. Civ. P. 54(d)." *See E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000).  Rule 54(d)(1) states: "Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Thus, Rule 54(d) creates a presumption in favor of awarding costs to a prevailing

---

[2]Defendant's supplemental submissions for attorney's fees, (docs.142 and 143), do not change this court's view since they rely on cases dismissing claims or granting summary judgment where the district courts plainly found the relevant claims unworthy from the beginning.  In contrast, here, the facts clearly supported the denial Defendant's motion for summary judgment and the court also had the benefit of a full blown trial.

party.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1038 (11th cir. 2000) (*en banc*).  However, "Rule 54(d) does not give district judges 'unrestrained discretion to tax costs to reimburse a litigant for every expense he has seen fit to incur in the conduct of his case.'"  *Fulton Fed. Sav. & Loan Ass'n of Atlanta v. Am. Ins. Co.*, 143 F.R.D. 292, 294-95 (N.D. Ga. 1991) (quoting *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964)).  Indeed, the Eleventh Circuit has warned that a district court's discretion "is not unfettered" but that "[t]o defeat the presumption and deny full costs, a district court must have and state a sound basis for doing so." *Chapman*, 229 F.3d at 1039 (citations omitted).  Nonetheless, a district court's decision about costs is reviewed for abuse of discretion, which "occurs if the trial judge bases an award or denial upon findings of fact that are clearly erroneous." *Mathews v. Crosby*, 480 F.3d 1265, 1276 (11th Cir. 2007).

The Eleventh Circuit "give[s] 'great deference to a district court's interpretation of its local rules.'"  *Pope v. Pilgrims Pride Corp.*, 250 F. App'x 282, 283 (11th Cir. 2007) (quoting *Clark v. Housing Auth.*, 971 F.2d 723, 727 (11th Cir. 1992)).  The "district court is the best judge of its own rules," and if its interpretation is reasonable, the appellate court must affirm.  *See id.* (citation omitted).  Here, Local Rule 54.1 requires that "[r]equests for taxation of costs (other than attorneys' fees) under Fed. R. Civ. P. 54(d) shall be filed with the

8

Clerk within 20 days after entry of judgment."  The court entered final judgment in this case on February 25, 2011.  Doc. 116.  Defendant filed its motion for attorney's fees and costs pursuant to 42 U.S.C. § 2000e-5(k) on March 11, 2011, (doc. 118), but failed to file a bill of costs with the Clerk of Court.

   (a) Defendant's Motion is Timely

   First, the EEOC asserts that the court must deny Defendant's request for costs in its entirety because Defendant failed to timely file the request with the Clerk of Court or provide the requisite Form AO 133.  See doc. 124.  Likewise, the EEOC moves to strike Defendant's bill of costs because the form lacks proper itemization and was untimely submitted as an exhibit to Defendant's reply brief. Doc. 134.  In its discretion, due to the circumstances here, the court treats Defendant's attempt to file its bill of costs as sufficient.  Specifically, although the Local Rules require Defendant to file with the Clerk of Court, Defendant timely filed its motion with the court and, in doing so, gave the EEOC sufficient notice of its request for fees.  Thus, while the EEOC correctly notes that this court has discretion to reject an untimely bill of costs, the presumption in favor of awarding costs to prevailing parties persuades this court to treat the timely filing of its motion as sufficient to preserve Defendant's right to costs.  Accordingly, the EEOC's motion to strike is **DENIED**.

9

Similarly, though Defendant failed to include the proper Form AO 133 with its initial motion, Defendant provided an itemization of the costs it requested. *See* doc. 118-2.  Moreover, Defendant attached the requisite form, along with the itemization, to its reply brief. *See* doc. 131 at 93.  Other courts have permitted parties to cure such procedural defects, and this court will do the same. *See, e.g., Odum v. Rayonier, Inc.*, 2007 WL 2002448, at *1 n.1 (S.D. Ga. July 5, 2007) (plaintiff cured defect by submitting the requisite affidavit).  Thus, the Clerk of Court has enough information to determine the appropriate amount to tax as costs and the EEOC's motion to strike the additional Form AO 133 is **DENIED**.

*(b) Costs Limited to Those Enumerated in § 1920*

A district court awards costs pursuant to 28 U.S.C. § 1920, which provides for the taxation of costs for: (1) fees of the clerk and marshal; (2) fees for transcripts; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and costs of making copies; (5) docket fees; and (6) compensation of court experts and interpreters and interpretation services.  "[F]ederal courts are bound by the limitations set out in . . . § 1920" and may not expand that list without explicit statutory authority. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444-45 (1987).

In its brief in support of its motion for costs and fees, Defendant "seeks

reimbursement of all of its expenses in the amount of $8,756.13." Doc. 119 at 18. While the court recognizes that Defendant undertook many expenses in the defense of this case, the law does not allow a prevailing party to recover all such expenses, reasonable or otherwise. *See Fulton Fed. Sav. & Loan Ass'n*, 143 F.R.D. at 294-95. Indeed, the Eleventh Circuit specifically rejected many of the costs Defendant requests here. *See Gary Brown & Assocs., Inc. v. Ashdon, Inc.*, 268 F. App'x 837, 845-46 (11th cir. 2008) (affirming that costs for "courier/postage, Lexis-Nexis research, airfare, and lodging are not included under § 1920"); *see also Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (rejecting the taxation of "costs such as general copying, computerized legal research, postage, courthouse parking fees and expert witness fees, which are clearly nonrecoverable"). Moreover, Defendant's citation to *Dowdell v. City of Apopka*, 698 F.3d 1181 (11th Cir. 1993), Section 1988, and the liberal award of costs to successful civil rights plaintiffs, *see* doc. 119 at 17, carries no weight here, where Defendant neither moves for costs under a specific civil rights statute nor pursued a civil rights action on behalf of the public. Thus, the court must identify which costs Defendant is, in fact, entitled to have taxed.

      1.    <u>Fees of $442.07 for Service of Summons and Subpoena</u>

Defendant provides itemization for $442.07 for service fee/subpoena on

February 9, 2011, presumably for witnesses for trial.  Doc. 119-2 at 59.

Accordingly, the court **GRANTS** Defendant's motion to tax costs for subpoenas

necessary for the defense of this case in the amount of **$442.07**.

2.      Fees of $2,235.60 for Printed or Electronically Recorded Transcripts

Defendant provides itemization for deposition transcript costs, all of which

were reasonably necessary for trial and therefore recoverable.  These itemizations

include the amounts of $503.45, $176.20, and $784.65, totaling $1,464.30, for the

respective depositions of Meghan Wayman, Kathie Bothma, and, jointly,

Devoralyn McGhee and C. Emanuel Smith.  Doc. 119-2 at 36.  Likewise,

Defendant provides itemization of Lindsey Jones's deposition transcript, $771.30.

Doc. 119-2 at 26.  Given the nature of the case, the court finds these depositions

were taken in good faith and in the reasonable defense of this action.

Accordingly, the court **GRANTS** Defendant's request for transcript costs in the

amount of **$2,235.60**.

3.      No Fees for Printing and Duplicating

Defendant seeks $5,000 in costs for "duplicating."  However, the Eleventh

Circuit has held that "general copying" charges are "clearly nonrecoverable."

*Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (per curiam).

Furthermore, the party seeking to recover photocopying costs must present

evidence regarding the documents copied, including their use or intended use.  *See Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994) (district court did not err in disallowing photocopying costs when plaintiffs "did not present required evidence regarding the documents copied or their use or intended use").

Defendant provides several generic entries for "Duplicating," but never provides any further itemization or intended use for the "Duplicating" charges.  As the EEOC concedes, copies necessarily made for trial or for delivery to the court as a courtesy copy are recoverable.  *See Wyne v. Medo Indus., Inc.*, 329 F. Supp. 2d 584, 590 (D. Md. 2004).  Because the court received many courtesy copies from the parties, the court has no doubt that at least a portion of the "Duplicating" charges were necessary and are taxable.  Unfortunately, the court has no means of discerning specifics about the amount of "Duplicating" costs because Defendant provided no indication of the use of any of the copies.  However, in its discretion, a court may afford a party the opportunity to submit an amended bill of costs to include "information as to what types of documents were copied, who was in possession of the originals of these documents, what the purpose of copying these documents was, and why these copies were necessary for use in the case." *See Corsair Asset Mgmt., Inc. v. Moskovitz*, 142 F.R.D. 347, 352 (N.D. Ga. 1992).

13

Likewise, this court will afford Defendant an opportunity to supplement its bill of costs to identify specifics as to the uses of the various "Duplicating" costs. Any such supplementation is due on **June 30, 2011** and the EEOC's objection, if any, is due by **July 8, 2011**.

4.    No Fees for Other Costs

Because Defendant makes no attempt to explain or identify the $761.97 in "Other costs," the court **DENIES** Defendant's request to tax those costs.

## B. The EEOC's Motion for Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(a)(1) provides that judgment as a matter of law is appropriate if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Importantly, the court "do[es] not assume the jury's role of weighing conflicting evidence or inferences, or of assessing the credibility of witnesses." *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1177 (11th Cir. 2005), *aff'd*, 550 U.S. 618 (2007). In reviewing a motion for judgment as a matter of law, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "Thus, although the court should review

14

the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not *required* to believe." *Id.* at 151 (emphasis added). A court will grant a judgment as a matter of law if "reasonable people could not arrive at a contrary verdict," or, in other words, if the nonmovant failed to present enough evidence "such that a *reasonable* jury could find for the nonmovant." *Ledbetter*, 421 F.3d at 1177 (emphasis in original) (citation omitted).

The EEOC asserts that no reasonable fact finder could conclude that Lindsey Jones' pregnancy was not a motivating factor or proximate cause in her termination. The EEOC bases this assertion on the evidence it presented at trial that Kathie Bothma confronted Jones on day one about not discussing her pregnancy when she applied for the position and told Jones three days later that her termination was a good thing for her in light of her pregnancy, which Wayman confirmed at her 30(b)(6) deposition. The court disagrees with the EEOC that no reasonable fact-finder could conclude based on ***this trial*** that Jones' pregnancy was not a motivating factor or proximate cause of her termination.

The heart of the EEOC's motion is the Supreme Court's recent opinion in *Staub v. Proctor Hospital*, - - - U.S. - - - , 131 S. Ct. 1186 (2011),[3] in which the

---

[3]The Supreme Court released its opinion in *Staub* after this court entered judgment on the jury verdict.

Court expanded its "cat's paw" jurisprudence by holding "that if a supervisor performs an act motivated by [unlawful] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable," even if the final decision maker did not know of the discriminatory animus and harbored no such animus himself.  *Id.* at 1194 (emphasis in original).  Importantly, in *Staub*, the jury concluded that the non-decision-making supervisors acted with discriminatory animus and that they did so to have the plaintiff terminated.  *See id.*  Because evidence existed to support the jury's inference that those supervisors intended to have the plaintiff terminated, the Supreme Court concluded the jury's verdict was reasonable and reversed the Seventh Circuit.  *See id.*  Importantly, the inference of intent present in *Staub* is not present here where the jury did not find for the EEOC and presumably accepted Defendant's evidence that Bothma inquired about Jones' pregnancy to ensure that Defendant did not expose Jones to dangers it has on site. Nonetheless, the EEOC asserts that here, the jury should have found, as it did in *Staub*, that discriminatory animus influenced Defendant's termination decision.

First, the EEOC asserts that, "At trial of this matter, there was uncontradicted and unimpeached evidence that Kathie Bothma harbored a discriminatory animus toward Lindsey Jones because she was pregnant."  Doc.

16

122 at 16.  Bothma, however, denied harboring a discriminatory animus and claimed to not even know of Jones' pregnancy for most of Jones' employment.  *See* doc. 139 at 20-28.  Indeed, Bothma denied considering Jones' pregnancy whatsoever in the discharge and testified that she mentioned Jones' pregnancy without animus.  *See id.* at 28-29.  Counsel for Defendant also read to the jury Jones' deposition statements admitting that she was not sure her pregnancy affected the way Bothma treated her.  *See* doc. 139 at 79-80.  Several other witnesses testified about Jones' inability to carry out the paging and various required tasks.  Whether the EEOC believes Bothma and the other witnesses is of no import because the jury apparently did, and the court may not now weigh the evidence and make credibility determinations itself.  *See Reeves*, 530 U.S. at 150.

Furthermore, the court disagrees that this case is as similar to *Staub* as the EEOC asserts.  In *Staub*, the Court accepted as proven the discriminatory animus against the plaintiff because the plaintiff's two supervisors admitted to their hostility toward the plaintiff based on his protected status and additional witnesses testified that these supervisors stated a desire to get rid of the plaintiff.  *See Staub*, 131 S. Ct. at 1189.  Importantly, here, the most the EEOC asserts regarding discriminatory animus are statements that are not so blunt and directly on point as those in *Staub*.  More importantly, the jury either found that Bothma did not make

17

all of the alleged statements, that she made them without discriminatory animus, or that her animus did not influence the decision to terminate.  In any case, the jury in *Staub* made precisely the opposite conclusion – and because the jury found for the plaintiff in *Staub*, the Supreme Court viewed all facts in a light most favorable to him.  *See id.*

Additionally, the EEOC asks the court to import the *Staub* reasoning, that "[a]nimus and responsibility for the adverse action can both be attributed to the earlier agent . . . if the adverse action is the intended consequence of that agent's discriminatory conduct."  Doc. 122 at 23-24 (quoting *Staub*, 131 S. Ct. at 1192). However, this court cannot assume, as the EEOC apparently does, that Bothma either harbored a discriminatory animus or engaged in discriminatory conduct with the intent that Defendant terminate Jones.  While those facts may have been present in *Staub*, the jury rejected the EEOC's theory here, and this court will not revive it simply because it fits nicely with the facts of a recent Supreme Court case.  Moreover, the EEOC ignored evidence of Wayman's role in Jones' termination, as Wayman trained Jones and ultimately recommended Jones' termination.  At no point has the EEOC asserted that Wayman acted on or harbored any discriminatory animus.  In fact, Wayman testified unequivocally to the contrary.  Doc. 138 at 129-131 (testifying that pregnancy was never discussed

or considered in the termination recommendation discussions nor was it ever mentioned to the final decision maker).  Significantly, Jones also testified that Wayman did not harbor or express any prejudice and that she does not believe Wayman discriminated against her.  Doc. 139 at 81 (during cross-examination of Jones, "**Q**: You didn't feel like Meghan Wayman discriminated against you?  **A**: No.").[4]  Again, this distinguishes the case from the facts of *Staub*, where the evidence showed that the individuals with the animus actually influenced the termination decision.

In short, the EEOC asks the court to consider the evidence and reach a conclusion the <u>jury rejected</u> – i.e. that the statements by Bothma were made, that they are sufficient evidence of discriminatory animus, and that they influenced the decision to terminate.  The EEOC asserts that it "proved in this case that discriminatory animus was a proximate cause leading to the termination of Lindsey Jones."  Doc. 136 at 6.  However, based on the jury's findings and the conflicting evidence, the court disagrees the EEOC ever *proved* the existence of Bothma's discriminatory animus or *proved* that it influenced the decision-making process.  Because Defendant presented several witnesses, including Bothma, to

---

[4]Counsel for Defendant also impeached Jones at trial with her deposition testimony: "**Q**: Did anyone at Riverview treat you differently because you were pregnant?  **A**: Not that I know of."  Doc. 139 at 80.

support a contrary conclusion, the court believes the jury reasonably concluded

that discriminatory animus was not a motivating factor or proximate cause in

Wayman's decision to recommend termination and in Defendant's decision to

terminate Jones.  Accordingly, the court **DENIES** the EEOC's motion for

judgment as a matter of law.

## C.  The EEOC's Motion for a New Trial

A court may grant a new trial, after a jury trial, "for any reason for which a

new trial has heretofore been granted in an action at law in federal court."  Fed. R.

Civ. P. 59(a)(1)(A).  A court has great discretion when reviewing a motion for a

new trial, *see Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980), and its

decision on a motion for a new trial is reviewed for an abuse of discretion, *see

Johnson v. FFE Transp. Servs., Inc.*, 227 F. App'x 780, 781 (11th Cir. 2007).  "A

judge should grant a motion for a new trial when the verdict is against the clear

weight of the evidence or will result in a miscarriage of justice."  *Johnson*, 227 F.

App'x at 782 (internal quotation marks and citation omitted).  "Because it is

critical that a judge does not merely substitute his judgment for that of the jury,

new trials should not be granted on evidentiary grounds unless, at a minimum, the

verdict is against the great – not merely the greater – weight of the evidence."

*Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th

Cir. 2001).

Here, the EEOC moves for a new trial asserting that the jury's verdict was against the great weight of the evidence and that the court's jury instructions contained an erroneous statement of the law.

(i) Not Against the Great Weight of Evidence

As to the EEOC's assertion that the verdict goes against the weight of the evidence, frustratingly, the EEOC attempts to re-try its case in its post-trial brief. The EEOC regurgitates the evidence regarding comparators it elicited at trial, largely the same evidence upon which this court based its denial of Defendant's summary judgment motion. *See* doc 62. Finally, the EEOC provides the court with numerous reasons it doubts the credibility of certain of Defendant's witnesses. Indeed, the EEOC argues that "a reasonable jury could conclude" that the evidence it presented demonstrated that Defendant had falsified training notes and that its proffered nondiscriminatory reason for Jones' termination was pretext. *See* doc. 122 at 33. But the EEOC's argument that the jury *could* have believed certain evidence or *should* or should not have found particular witnesses credible does not compel this court to replace the jury's judgment with its own. Defendant presented its own evidence, and the jury had the opportunity to listen to Jones' testimony firsthand and evaluate the very communication skills Defendant called

21

into question.  The EEOC cannot now suggest that the *existence* of evidence to support its claim necessitates a jury verdict in its favor.  Contrary to the EEOC's assertion, the evidence adduced at trial and the testimony of the various witnesses made clear that this was a close case and, in the end, based on this very evidence, the jury found for Defendant.  The court will not now eviscerate the jury's reasoned determination.

Additionally, the court questions the EEOC's version of the trial.  The EEOC relies heavily on assertions that Bothma demonstrated discriminatory animus towards Jones.  *See* doc. 122 at 16-22.  However, the EEOC called Bothma at trial, and the jury heard her testimony as well as that of Wayman, who testified that she heard Bothma's statement about Jones' pregnancy.  *See* docs. 138 and 139.  The jury, however, is entitled to weigh those statements and is free to accept Wayman's explanation that knowing about a pregnancy is important to ensure that the pregnant employee is not asked to lift heavy items or handle chemotherapy equipment or other drugs that could pose risks to the pregnancy, doc. 138 at 134, and Bothma's testimony that her mention of pregnancy was simply to try to soften the blow of Lindsey's termination, doc. 139 at 28.[5]  While the EEOC obviously

---

[5]At trial, the following exchange took place between the EEOC's Counsel ("Q") and Bothma ("A"):

disagrees, a reasonable jury could conclude that Bothma and Wayman's testimony support the conclusion that Bothma's mentioning of pregnancy did not evidence animus.[6]

Alternatively, even if Bothma's statements constitute evidence of discrimination, the EEOC cannot rely on those statements, alone, and contend that the jury erred by finding the statements were non-discriminatory or that the final determination was not influenced by any animus Bothma did, in fact, harbor. Again, Wayman repeatedly testified that she made the termination recommendation and that Jones' pregnancy never arose in either her conversations with Bothma or with Dr. Arthur Serwitz.  Doc. 138 at 107, 127, 129-130.

---

**Q**: The final sentence of that paragraph states that you told Lindsey on the day she was terminated that she was probably going to be under too much stress and being pregnant wasn't going to work out?
**A**: Absolutely not true.
**Q**: You never said those words?
**A**: I said she was under a lot of stress because she was unable to perform her job. She was having trouble performing her job, and that was very stressful.  And when you're terminating someone, you try to make it as soft a blow as possible. But I did not state that she was – that being pregnant was the reason it wasn't going to work out.
**Q**: So you deny making those statements?
**A**: Yes I do.

Doc. 139 at 28-29.

[6]Another witness, Dr. Amy Tate, who was not present for the termination decision, provided the jury with a similar interpretation: "My recollection is more that [Bothma's] comments came across as trying to be consoling to her, even though the words may not have been appropriate."  Doc. 140 at 100.

Moreover, as stated earlier, Jones bolstered Wayman's credibility by testifying that she considers her credible and does not believe Wayman discriminated against her. *See* doc. 139 at 79, 81-82 (testifying that Wayman is honest and that Jones has no reason to believe she would lie or has lied to her).  In short, the EEOC's motion for a new trial based on the weight of evidence ignores the body of evidence Defendant presented at trial, and is, therefore, due to be **DENIED**.

(ii) <u>No Error in Jury Instructions</u>

The EEOC also asserts that the court erred in its use of Eleventh Circuit pattern jury instructions.[7]  Jury instructions are reviewed "*de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party."  *Palmer v. Bd. of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000).  However, the Eleventh Circuit applies "a deferential standard of review to jury instructions [and denial of proposed instructions], and so long as the jury instructions accurately reflect the law, the trial judge is given wide discretion to the style and wording of the instructions."  *Specialized Transp. of Tampa Bay v. Nestle Water N. Am., Inc.*, 356 F. App'x 221, 226 (11th Cir. 2009) (citation omitted).  A court should not disturb the jury instructions "unless the jury

---

[7]The court notes that the use of the Eleventh Circuit's pattern instructions does not shield the court from constitutional inquiry.

instructions, taken as a whole, are erroneous or prejudicial." *Id.* at 227 (citation omitted). Thus, "[i]f the instructions as a whole properly express the law, there is no error even if an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism." *Id.* (internal quotation marks and citation omitted). To support a new trial, the court must be "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *See id.* (internal quotation marks and citation omitted).

The EEOC bases its challenge to the jury instructions on *Staub*, and asserts that *Staub* altered the state of the law regarding cat's paw theory cases, making liability possible even if the final decision-maker had no knowledge of the discriminatory animus. *See Staub*, 131 S. Ct. at 1194; *see also* doc. 122 at 42. However, the EEOC incorrectly asserts that the court's jury instructions were inconsistent with the *Staub* decision. Moreover, even if the instructions were inconsistent, any error was harmless in light of the fact that the EEOC failed to demonstrate that Bothma's alleged discriminatory animus affected Wayman's recommendation or Dr. Serwitz's decision to terminate.

*Staub* was tried as a "cat's paw" case at the trial court – and the trial court gave the jury instructions regarding that cat's paw theory and the definition of "motivating factor" with regard to influence on the final decision maker's

termination decision.  *See Staub*, J.A., 2010 WL 2707600 at * 68a-71a.  In light of

those instructions, the jury concluded that illegal discriminatory animus was a

motivating factor in the decision and, therefore, found for the plaintiff.  *Staub*, 131

S. Ct. at 1190.  The Seventh Circuit reversed, holding that the defendant was

entitled to judgment as a matter of law.  Staub v. Proctor Hosp., 560 F.3d 647 (7th

Cir. 2009).  Because the final decision-maker took the termination action "free of

any military-based animus" and did not blindly rely on a recommendation infused

with animus, the Seventh Circuit concluded that a reasonable jury could not have

found that the plaintiff was fired because he was a member of the military.  *Id.* at

659.  The Supreme Court granted certiorari, 130 S. Ct. 2089, and, after analyzing

the merits of the plaintiff's claim, explained that the trial court's "jury instruction

did not hew precisely to the rule we adopt today: it required only that the jury find

that 'military status was a motivating factor in [the defendant's] decision to

discharge him.'"  131 S. Ct. at 1194 (citing J.A. 68a).  The court then explained,

"Whether the variance between the instruction and our rule was harmless error or

should mandate a new trial is a matter the Seventh Circuit may consider in the first

instance."  *Id.*  Thus, the Supreme Court left open the possibility that a jury

instruction with reference only to a "motivating factor" could require a new trial.

*See id.*

26

Here, the EEOC briefly mentioned the cat's paw theory at trial.[8]

Accordingly, there was no need for the court's jury instructions to include the specific "cat's paw" related instructions.  Instead, the instructions explained:

> Under Title VII, if there is proof that pregnancy-related bias influenced a discharge decision, the discharge would be unlawful. . . . A discharge would be unlawful if the person who made the discharge decision did so because of his or her own personal pregnancy related bias or if he or she was influenced to make the decision by a person motivated by pregnancy related bias.

Doc. 113 at 7-8.  The instructions continued, "[i]t is sufficient if the EEOC proves that Lindsey Jones' pregnancy was a substantial or motivating consideration that made a difference in Riverview's decision."  *Id.* at 9.  Indeed, at *the EEOC's request*, the court reread those portions of the jury instructions to the jury in response to the jury's questions regarding whether "substantial or motivating" could be reduced to percentages.  *See* doc. 114; doc. 129 at 5-6.  The court believes those instructions explain the court's jury verdict form and accurately depict the state of the law before and after *Staub*.  In other words, if the jury found Bothma was motivated by discriminatory animus, that she intended Jones' termination, and that her actions proximately caused that termination, then

---

[8]*See generally* docs. 138, 139, 140, and 141.  The EEOC mentioned the "cat's paw" theory only once during its closing argument: "Whether it's under cat's paw or otherwise, it's very clear that there was an adverse employment action . . . ."  Doc. 140 at 150.

pursuant to the jury instructions, that animus would have influenced the decision to terminate and would make the discharge unlawful.

Indeed, in its closing, the EEOC's counsel tracked the language of the instructions: "But there's no question that Kathie Bothma was involved in that decision.  She influenced the decision and influenced the decision-maker."  Doc. 140 at 173.  Thus, the EEOC made it clear to the jury that if it believed Bothma harbored discriminatory animus that influenced the decision, then the termination was unlawful.  By explaining in the jury instructions that the EEOC succeeds if it proves that pregnancy "made a difference in Riverview's decision," the court must assume that the jury's decision in favor of the Defendant means the jury did not agree that pregnancy was a factor – substantial, motivating, influential, or otherwise – in the decision.  Thus, even if the jury believed Bothma had discriminatory animus, it apparently concluded that her animus did not influence Defendant's decision to terminate Jones.

Undoubtedly, post-*Staub*, the EEOC would likely push for more specific jury instructions – perhaps the EEOC would even try the case with greater emphasis on the cat's paw theory.  So long as the instructions were consistent with the law, however, the EEOC may not get a second chance to try its case.  In any event, the language in the pattern jury instructions are not inconsistent with *Staub*

– if a supervisor's act was motivated by discriminatory animus and intended to cause an adverse action, and that act was, in fact, a proximate cause of the adverse action, then the supervisor's act and animus must have influenced the final decision.

Finally, even if the court agreed that the instructions improperly hewed to the precise rule of *Staub*, any error or inconsistency was harmless.  As mentioned above, in *Staub*, the supervisors made several statements to coworkers evidencing discriminatory animus and vocalized their desire to be rid of the plaintiff.  *See Staub*, 131 S. Ct. at 1189.  Those supervisors then issued the plaintiff an allegedly false disciplinary warning and, later, accused the plaintiff of further violations.  *Id.* And the final decision maker relied on the supervisors' actions to support the termination decision.  *Id.*  Thus, the Supreme Court concluded that if those actions were infused with discriminatory animus, as the jury found, then the employer could be held liable.  *Staub*, 131 S. Ct. at 1194.  Conversely, here, Defendant asserted that Wayman, not Bothma, made the termination recommendation.  It was Wayman's, not Bothma's, review of Jones that the final decision-maker relied upon.  Moreover, there was no determination that Bothma intended to have Jones fired or that she influenced Wayman's decision or the final decision.  Indeed, Wayman testified that she recommended to Bothma and Dr. Serwitz that Jones be

terminated.  *See* doc. 138 at 107, 127, 129-131.  At most, the evidence shows that Wayman discussed her decision to recommend terminating Jones with Bothma. *Id.*  Thus, even assuming the jury agreed with the EEOC that Bothma harbored a discriminatory bias, the EEOC did not present the jury with an act undertaken by Bothma that she intended to cause and that did cause Jones' termination, distinguishing this case from *Staub*.  That the EEOC believes the jury *should* have inferred an intent to have Jones fired on the part of Bothma does not support the EEOC's effort to overturn the jury's verdict.

In short, the court is not "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations."  *See Specialized Transp. of Tampa Bay*, 356 F. App'x at 227 (citation omitted) (affirming jury instructions where the court noted certain inconsistencies but found that the district court gave "an accurate description of the substantive law").  Because the court's instructions were not in error and because the EEOC failed to persuade the jury that discriminatory animus influenced the final decision or constituted a motivating factor, the court **DENIES** the EEOC's motion for a new trial based on the alleged inconsistency between *Staub* and the court's jury instructions.

## **CONCLUSION**

For the reasons stated more fully above, the court:

1. **DENIES** Defendant's motion for attorney's fees;

2. **GRANTS**, in part, Defendant's motion to tax costs;

3. **DENIES** Defendant's motion for a hearing;

4. **DENIES** the EEOC's Motions to Strike;

5. **DENIES** the EEOC's Motion for Judgment as a Matter of Law; and

6. **DENIES** the EEOC's Motion for a New Trial.

**DONE** and **ORDERED** this 23rd day of June, 2011.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE